Cohn, J.
After successfully passing an open competitive examination, petitioner was duly appointed to the position of social investigator in the department of public welfare, city of New York, on November 16, 1931, and served in that capacity up to May 12, 1949. On that day she was advised by her superiors that it would be necessary for her to take a medical leave of absence with pay beginning May 13, 1949. This order was given because petitioner’s immediate superior believed that petitioner was emotionally upset and that this condition for about six months prior thereto had adversely affected her work. She was informed that it would be advisable to obtain medical treatment and that, she would have to submit medical proof of her ability to perform her duties before she would be permitted to resume work. Thereafter, without any request by her, the leave of absence was extended from October 11, 1949, to December 31, 1949. On January 3, 1950, petitioner demanded an immediate return to her position but was told that she was being continued on leave of absence status except that it was thenceforth to be without pay. Petitioner objected to this enforced suspension. No charges of any kind were ever served upon petitioner alleging incompetency, misconduct, insubordination or dereliction of duty.
On April 19, 1950, she sought to vacate the order made by the commissioner on January 3, 1950, which extended her leave of absence to June 30, 1950, the claim being that the commissioner of the department of welfare had no authority to place petitioner on a compulsory leave of absence status without pay in the absence of written charges alleging incom- • petency or misconduct. The Special Term held that petitioner was estopped from maintaining that the compulsory leave of absence was without her consent; that she had refused to, submit proper proof of- fitness to return to the performance of her duties; and that she had been guilty of laches.
Since the position of social investigator is in the competitive class, removal therefrom is controlled by subdivision 2 of section 22 of the Civil Service Law, which provides: “ 2. Removals generally. No officer or employee holding a position in the competitive class of the civil service of the state, or any civil division or city thereof, shall be removed except for incom *583 petency or misconduct. The person whose removal is sought shall have written notice of such proposed removal and of the reasons therefor, and shall be furnished with a copy of any charges preferred against him, and shall be allowed a reasonable time for answering the same in writing. Pending the determination of such charges such officer or employee may be suspended without pay for a period not exceeding thirty days.”
Similarly, section 1543 of the Greater New York Charter (L. 1901, ch. 466) provides: “ But no regular clerk or head of a bureau, or person holding a position in the classified municipal civil service subject to competitive examination, shall be removed until he has been allowed an opportunity of making an explanation * * *.”
There is no statutory provision which authorizes the commissioner of the department of welfare to place petitioner on a leave of absence status without pay in the absence of written charges, and where such illegal action is taken, there is no jurisdiction conferred upon the department head to direct such employee to undergo a medical examination as a condition precedent to reinstatement. If an employee becomes incompetent because of mental or physical incapacity, the department head has ample authority to effect a dismissal of such person upon appropriate charges with a reasonable opportunity afforded to answer the charges and to make an explanation. Should incompetency arise because of mental or physical disability incurred in the performance of duty, such person may, in an appropriate case, be retired under the provisions of the statute.
The commissioner was, of course, empowered to suspend petitioner under the provisions of subdivision 3 of section 884AL.0 of the Administrative Code of the City of New York, which provides as follows: “3. In his discretion, to suspend for not more than one month without pay, any subordinate pending the hearing and determination of charges against such subordinate, or the making of any explanation, as the case may be. If the subordinate so suspended be removed, he shall not be entitled to salary or compensation after suspension. If he be not so removed, he shall be entitled to full salary or compensation from the date of suspension to the date of reinstatement, less such deduction or fine as may be imposed.” It is to be noted that under the foregoing statutory provision, suspension may be imposed only where charges have been preferred.
*584 Undoubtedly the commissioner of welfare, as the Special Term observed, was motivated by a desire to accord petitioner humane and just treatment by placing her on a medical leave of absence with pay until December 31, 1949, so as to permit her to obtain the necessary medical treatment. However, we find no sanction in the law which sustains his direction, made on January 3, 1950, requiring petitioner against her will to continue to remain on leave of absence without pay to the following June and thereafter to submit to a medical examination before reinstatement.
Petitioner has emphatically denied that she is mentally or physically unfit to continue her service as social investigator. She should immediately be reinstated with pay and if, as the commissioner asserts, she is mentally incompetent to continue her duties, appropriate charges may be made against her seeking her dismissal or she may, upon compliance with the provisions of the statute, be retired if she is incapable of continuing performance of her duties for either physical or mental incapacity. (Administrative Code of City of New York, § B3-39.0.)
Petitioner was not guilty of laches. This proceeding, instituted on April 19, 1950, seeks to vacate an order made by the commissioner on January 3, 1950, which extended appellant’s leave of absence to June 30,1950. Pour months had not elapsed since January 3, 1950, when this proceeding was instituted, and in any event the wrong claimed is a continuing one. Hence the four-month Statute of Limitations as set forth in section 1286 of the Civil Practice Act would have no application.
We do not think that petitioner is entitled to have annulled the action of the civil service commission in assigning to her a substandard rating of %%. The substandard rating was not fixed because she refused to submit to a psychiatric examination. On the contrary, the record shows that the personnel board eliminated this complaint from the report on petitioner sent to the municipal civil service commission which, by the rules, was empowered to assign the civil service rating. The rating in question was predicated upon the petitioner’s inability to co-operate during the alleged emotional disturbance observed from October, 1948, to March 31, 1949, as a result of which “ her presence in the office was disruptive.” As there is some evidence to sustain the commission’s substandard rating, its judgment should not be disturbed.
*585 The order should accordingly be modified by granting the application of petitioner to the extent of • reinstating her to her position with pay from January 1, 1950, less any sums that she may have earned during that time from any other occupation. Settle order.
Glennon, J. P., Dose, Callahan and Shientag, JJ., concur.
Order unanimously modified in accordance with opinion herein and, as so modified, affirmed, with $20 costs and disbursements to the petitioner-appellant. Settle order on notice.